# UNITED STATES DISTRICT COURT
для the
Northern District of New York

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 8:18-MJ-382 (GLF)
1) ZTE Z828 cellular telephone, IMEI: 862579035078732; 2) Apple iPhone A1688, IMEI: )
359486088752231; 3) Apple iPhone A1778, IMEI: 354828092901590; 4) Swiss Mobility Gen Swiss 10 )
cellular telephone, IMEI: 351954091222318; 5) Huawei KII-L05 cellular Telephone, IC#: 6369A-KIIL05; )
6) B-Mobile AX1070 cellular telephone IMEI: 352739080004796; 7) Apple iPhone A1634, IMEI: )
353299074330391; 8) Apple iPhone A1688, IMEI: 359486088600000; 9) Apple iPhone A1633, FCC IC: )
579C-E2946A )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the ____Norhtern____ District of ____New York____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. §§ 1324, 1325, 1326 | Alien smuggling; illegal entry; and illegal reentry after deportation or removal |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jared Smith, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 3, 2018

*Judge's signature*

City and state: Plattsburgh, New York     Hon. Gary L. Favro, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR SEARCH WARRANTS FOR THE FOLLOWING ELECTRONIC DEVICES:<br><br>1) ZTE Z828 cellular telephone<br>      IMEI: 862579035078732<br>2) Apple iPhone A1688<br>      IMEI: 359486088752231<br>3) Apple iPhone A1778<br>      IMEI: 354828092901590<br>4) Swiss Mobility Gen Swiss 10 cellular telephone<br>      IMEI: 351954091222318<br>5) Huawei KII-L05 cellular telephone<br>      IC #: 6369A-KIIL05<br>6) B- mobile AX1070 cellular telephone<br>      IMEI: 352739080004796<br>7) Apple iPhone A1634<br>      IMEI: 353299074330391<br>8) Apple iPhone A1688<br>      IMEI: 359486088600000<br>9) Apple iPhone A1633<br>      FCC IC: 579C-E2946A<br><br>Currently located at the Champlain Border Patrol Station in Champlain, New York | No. 8:18-MJ-382(GLF)<br><br><br><br><br><br>**AFFIDAVIT IN SUPPORT OF<br>APPLICATION FOR SEARCH WARRANT** |

I, Jared Smith, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.   I am a Border Patrol Agent of the United States Border Patrol ("USBP"), and have been so employed since August 20, 2001. Currently, I am assigned to the Champlain, New York Station. I make this affidavit in support of an application for a search warrant authorizing the search of: 1) ZTE Z828 cellular telephone ("Device 1"); 2) Apple iPhone A1688 ("Device 2"); 3) Apple iPhone A1778 ("Device 3"); 4) Swiss Mobility Gen Swiss 10 cellular telephone ("Device 4"); 5) Huawei KII-L05 cellular telephone ("Device 5"); 6) B- mobile AX1070 cellular

telephone ("Device 6"); 7) Apple iPhone A1634 ("Device 7"); 8) Apple iPhone A1688 ("Device 8"); and 9) Apple iPhone A1633 ("Device 9"); fully described in paragraph 4 and Attachment A (collectively referred to as the "SUBJECT ELECTRONICS"), and the extraction from the SUBJECT ELECTRONICS of the electronically stored information, more fully described in Attachment B.  The SUBJECT ELECTRONICS are currently in storage at the United States Border Patrol Station in Champlain, New York, which is located in the Northern District of New York.  Through my training and experience, I know that the SUBJECT ELECTRONICS have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT ELECTRONICS first came into the possession of the USBP.

2.  The applied-for warrant would authorize the forensic examination of the SUBJECT ELECTRONICS for the purpose of identifying electronically stored data particularly described in Attachment B.  Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 8, United States Code, Section 1324 (alien smuggling), Title 8, United States Code, Section 1325 (illegal entry), and Title 8, United States Code, Section 1326 (illegal reentry) have been committed by Guillermina SANTIAGO-Garcia, Manases IXTEPAN-Marcial, Eduardo LAZARO-Calderon, Juan LAZARO-Gomez, Daniel URIBE-Hernandez, and Pablo SANTIAGO-Garcia.  There is also probable cause to search the property described in Attachment A, the SUBJECT ELECTRONICS, for evidence of these crimes as described in Attachment B.

3.  I have personally participated in the investigation of the offenses set forth below. As a result of my participation and review of past and present reports made by agents of the USBP, I am fully familiar with the facts and circumstances of this investigation. The statements

and facts contained in this affidavit are based upon my personal participation in this investigation, information provided by agents of the USBP, analysis of documents, my experience and training as a Border Patrol Agent with the USBP, and the experience and training of other agents involved in this investigation.

4. Since this affidavit is being submitted for the limited purpose of securing authorization to execute search warrants on various electronic devices, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for obtaining authorization to execute the search warrants.

**PROBABLE CAUSE**

5. On June 23, 2018 at approximately 8:50 PM, Swanton Sector Radio Dispatch (KAD640) received a call from a concerned citizen on Roxham Road in Champlain, New York. The concerned citizen stated that he/she saw a grey Chevrolet Silverado slowly pass by his residence with one occupant visible; a few minutes later the vehicle returned and the citizen saw multiple occupants. The concerned citizen further stated the vehicle bore Connecticut license plates. He/she then stated the vehicle passed out of his/her view and proceeded south on Perry Mills Road. The Roxham Road in Champlain, New York is a north/south road that runs from North Star Road to the U.S/Canadian border. This road is often used by illegal aliens and individuals participating in illegal cross border activity.

6. Border Patrol Agents assigned to the Champlain station responded to the area. Agent M. Grabda encountered a grey Chevrolet Silverado as he approached Perry Mills Road from Route 11. Agent Grabda turned around and returned eastbound on Route 11. Agent Grabda activated his emergency lights and initiated a vehicle stop at approximately 8:57 PM,

near the intersection of Creek Rd. and Route 11, which is approximately two miles south of the border. Agent R. Pidgeon arrived as Agent M. Grabda was telling KAD640 the license plate over the service radio (North Carolina FDW 2513). The two agents approached the vehicle. Agent Grabda identified himself as a USBP Agent and inquired to the citizenship of the occupants. Agent Grabda observed three individuals in the front and three in the rear compartment of the extended cab pickup.

7. Agents Pidgeon and M. Grabda noted that each of the four smuggled aliens were in possession of backpacks which were in their control, either on the floor or in their laps. The driver and the front seat passenger were not in possession of any backpacks or luggage despite their long drive from Charlotte, North Carolina. The fact that the four aliens were in possession of backpacks suggested that they may have been picked up recently. Agents observed a box of donuts in the back seat which had been compressed as if someone had sat on them. This is consistent with agent observations from prior smuggling events where it was noted that several people hastily entered a vehicle and trampled items on the floor with soiled shoes or crushed personal items in the seats. Also at the time of the encounter, Agents M. Grabda and Pidgeon observed the four smuggled aliens feet and pants were wet and muddy as if they had walked through a wooded area.

8. The driver, later identified as Guillermina SANTIAGO-GARCIA stated she was a Permanent Resident and presented Agent Grabda with a valid I-551 (green card). The second subject, Manases IXTEPAN-MARCIAL, claimed he had a work permit but did not have it on his person. The third subject, later identified as Eduardo LAZARO-CALDERON, stated he had no identification. Agent Grabda asked him of what country he was a citizen or national, and LAZARO-CALDERON replied "Mexico." Agent Grabda then asked if he was in possession of

any documents allowing him to be in or remain in the United States legally. LAZARO-CALDERON said "no." Agent Grabda informed LAZARO-CALDERON he was being placed under arrest for entering the United States illegally and removed him from the vehicle. The three rear compartment occupants later identified as Daniel URIBE-HERNANDEZ, Juan LAZARO-GOMEZ and Pablo SANTIAGO-Garcia, were also asked the same questions and the same answers were returned. All were placed under arrest and removed from the vehicle. Agent Grabda informed the driver, Guillermina SANTIAGO-GARCIA, that she was to follow the Agents in the Chevy Silverado and that she was to remain between two marked Border Patrol units. All were transported to the Champlain Border Patrol Station for further processing and record checks.

9. All of the subjects and their personal belongings were searched for weapons and contraband. During the search, cellular telephones were discovered on the subjects' persons or in their personal belongings, as described below.

    a. Device 1: Agent H. Gomez located a ZTE Z828 cellular telephone (IMEI: 862579035078732) in LAZARO-CALDERON's backpack.

    b. Device 2: Agent H. Gomez located an iPhone A1688 (IMEI: 359486088752231) in LAZARO-CALDERON's backpack.

    c. Device 3: Agent A. Hutchinson located an iPhone A1778 (IMEI: 354828092901590) in the left front pocket of Pablo SANTIAGO-GARCIA's hoodie.

    d. Device 4: Agent R. Pidgeon located a Swiss Mobility Gen Swiss 10 cellular telephone (IMEI: 351954091222318) in Pablo SANTIAGO-GARCIA's blue converse bag.

    e.    Device 5: Agent M. Grabda found a Huwei KII-L05 (IC#: 6369AKIIL05) on Daniel URIBE-HERNANDEZ's person.

    f.    Device 6: Agent R. Pidgeon found a B-Mobile AX1070 cellular telephone (IMEI: 352739080004796) located in URIBE HERNANDEZ's black "Ogio" brand bag.

    g.    Device 7: Agent M. Durocher located an iPhone A1634 (IMEI: 353299074330391) in Guillermina SANTIAGO-GARCIA's possession.

    h.    Device 8: Agent M. Durocher found an iPhone A1688 (IMEI: 359486088600000) in the right front pocket of Juan LAZARO-GOMEZ's pants pocket.

    i.    Device 9: Agent R. Pidgeon located an iPhone A1632 (FCC IC: 579C-E2946A) in Manases IXTEPAN-MARCIAL's left front pocket.

10.    All six of the occupants described in the vehicle were arrested by USBP and charged by criminal complaints filed in federal court. *See United States v. Guillermina Santiago-Garcia*, Case No. 8:18-MJ-351 (GLF); *United States v. Juan Lazaro-Gomez*, Case No. 8:18-MJ-353 (GLF); *United States v. Manases Ixtepan-Marcial*, Case No. 8:18-MJ-352 (GLF); *United States v. Daniel Uribe-Hernandez*, Case No. 8:18-MJ-356 (GLF); *United States v. Pablo Santiago-Garcia*, Case No. 8:18-MJ-355; *United States v. Eduardo Lazaro-Calderon*, Case No. 8:18-MJ-354 (GLF).

11.    Based on my training and experience in this and other cross-border criminal investigations I have been involved with, including individuals entering the United States illegally. Individuals crossing the border illegally will often communicate and coordinate with someone to pick them up once in the United States or to inform them that they successfully

crossed the border. Individuals involved in crossing the border illegally often use a cellular telephone's GPS functions to search for and map out potential crossing locations. An additional function of cellular telephones that can be utilized by individuals crossing illegally includes the camera, individuals will often take photos of where they are crossing the border illegally. Cellular telephone will often log an individual's location through GPS when taking photos, or using map functions.

12. The SUBJECT ELECTRONICS were seized incident to arrest and are currently in the lawful possession of the United States Border Patrol and have been since June 23, 2018. I seek this warrant in an abundance of caution to be certain that further examination of the SUBJECT ELECTRONICS will comply with the Fourth Amendment and other applicable laws.

13. Based on the foregoing, it is respectfully requested that a search warrant be issued for the SUBJECT ELECTRONICS which would allow for searches of all electronically stored information therein, including but not limited to: (1) listings of incoming and outgoing calls; (2) stored telephone and address directories; (3) direct connect and identification numbers; (4) all pictures and videos; (5) audio recordings relating to entry without inspection alien smuggling, and transporting aliens and conspiracy to transport aliens; (6) voice mail recordings relating to entry without inspection alien smuggling, and transporting aliens and conspiracy to transport aliens; (7) all GPS map or direction data; and (8) all instant messaging and related stored communications.

## TECHNICAL TERMS

14. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images.

This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

    to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

  e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

  f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

- 10 -

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

15. Based on my training, experience, and research, I know that the cellular telephones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. Further, I know that a cellular telephone has capabilities that allow it to serve as a GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17. *Forensic evidence.* This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT ELECTRONICS were used, the purpose of their uses, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT ELECTRONICS because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

- 13 -

18.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT ELECTRONICS consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

19.     *Manner of execution.*  Because this warrant seeks only permission to examine SUBJECT ELECTRONICS already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

20. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT ELECTRONICS as more fully described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Jared Smith
United States Border Patrol

Subscribed and sworn to before me

On  July 3, 2018

_____
HON. GARY L. FAVRO
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A
### Property to be Searched

The property to be searched is: one ZTE Z828 cellular telephone (IMEI: 862579035078732), one Apple iPhone A1688 (IMEI: 359486088752231), one Apple iPhone A1778 (IMEI: 354828092901590), one Swiss Mobility Gen Swiss 10 cellular telephone (IMEI: 351954091222318), one Huawei KII-L05 cellular telephone (IC #: 6369A-KIIL05), one B-mobile AX1070 cellular telephone (IMEI: 352739080004796), one Apple iPhone A1634 (IMEI: 353299074330391), one Apple iPhone A1688 (IMEI: 359486088600000), one Apple iPhone A1633 (FCC IC: 579C-E2946A) ("SUBJECT ELECTRONICS"). The SUBJECT ELECTRONICS are currently in storage at the United States Border Patrol Station in Champlain, New York. This warrant authorizes the forensics examination of the SUBJECT ELECTRONICS for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1. All records on the SUBJECT ELECTRONICS described in Attachment A that relate to violations of 8 U.S.C. §§ 1324, 1325, and 1326 and involve Guillermina SANTIAGO-Garcia, Manases IXTEPAN-Marcial, Eduardo LAZARO-Calderon, Juan LAZARO-Gomez, Daniel URIBE-Hernandez, Pablo SANTIAGO-Garcia., and their coconspirators, including:

   a. Listings of incoming and outgoing calls with corresponding date/time of calls;

   b. Stored telephone and address directories;

   c. Direct connect and identification numbers;

   d. Pictures and videos;

   e. All audio recordings;

   f. All voice mail recordings;

   g. All location and GPS data;

   h. All instant messaging and related stored communications;

   i. All SMS messages and related stored communications; and

   j. Any other notations or electronic storage of any kind.

2. Evidence of user attribution showing who used or owned the SUBJECT ELECTRONICS at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

a. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.